## Lake Wallenpaupack Land Company et al. v. Spinnler

*Shull & Shull,* for plaintiffs; *George R. Bull,* for defendant.

SHULL, P. J., January 28, 1932.—On November 30, 1931, plaintiffs filed their bill, together with the necessary affidavits and bond, and a preliminary injunction was issued.

A preliminary hearing was had on December 5, 1931, following which the preliminary injunction was dissolved. On December 21, 1931, defendant filed his answer. On December 29, 1931, plaintiffs filed an amended bill. The questions involved are:

First. Has the defendant, Joseph Spinnler, so conducted himself as to impair the sale of lots by plaintiffs, thereby preventing plaintiffs from raising the necessary funds to pay interest due November 1, 1931, on the mortgage held by Joseph Spinnler against plaintiffs?

Second. Did Joseph Spinnler enter into a conspiracy with one Spencer and others to bring about default under the mortgage and the consequent retaking of the premises from the Lake Wallenpaupack Land Company by Joseph Spinnler?

Third. Does the conveyance by the plaintiffs of 1010 feet of shore land make the whole mortgage now due and collectible under the terms of the same?

## Findings of fact

The court finds the following facts:

1. On May 1, 1929, Joseph Spinnler executed and delivered to Herbert T. Jones and H. D. Johnson a deed for the premises in question.

2. On the same day Herbert T. Jones and H. D. Johnson executed and delivered to Joseph Spinnler a mortgage in the sum of $40,000, covering said premises.

3. On August 10, 1929, Herbert T. Jones et ux. and H. D. Johnson et ux. executed and delivered a deed for the said premises to the Lake Wallenpaupack Land Company.

4. The mortgage in question contains the following:

"It is agreed by and between the parties hereto that not more than one thousand feet of shore land shall be sold unless this mortgage is paid in full—this restriction does not apply to the balance of property—without any fraud or further delay as in and by the said recited obligation and the condition thereof, relation to the same being had, may more fully and at large appear."

5. Joseph Spinnler erected on his property, in proximity to the land of the Lake Wallenpaupack Land Company, a sign in the following words:

"All lots sold at Spinnler Point must be released by Joe Spinnler."

6. The Lake Wallenpaupack Land Company expended a substantial sum of money in laying out and improving the land in question.

7. Joseph Spinnler approached several persons who had executed contracts to buy lots in this development and told them not to pay anything more, as they might lose what they paid; that he proposed to foreclose on the mortgage.

8. It appears from the record that 1010 feet of shore land had either been dedicated to the use of the back lots or actually sold.

9. Notice was given to Jones that such sale was in violation of the terms of the mortgage and payment of the mortgage was demanded.

10. The interest due August 1, 1931, is unpaid and past due.

11. Taxes on the property for the years 1929, 1930 and 1931 are past due and not paid by the plaintiffs.

## Discussion

The relief here sought is unusual though, in a proper case, is relief that this court may grant. In granting relief of this nature, the evidence must disclose facts from which it may fairly be concluded that the act or acts of the defendant are responsible for the condition or situation in which the complainants find themselves and from which they pray relief. Even though we might conclude that the plaintiffs had been injured by the defendant's course of action, this ordinarily would disclose but a right of action at law. To sustain this bill in equity it must appear not only that the defendant's course of action operated to discourage purchasers but that it resulted in preventing them to the extent that the complainant was thereby prevented from obtaining cash to meet the payments required by the mortgage. It would have to appear that purchasers were actually available; that they were willing to purchase on a basis that would have furnished the necessary cash and also that they were actually able to do so.

The testimony on behalf of the plaintiffs does not measure up to this standard. The displaying of the sign, the statements by the defendant that no improvements could be made without first obtaining a release, and that further payments on contracts might result in loss, as he expected to foreclose the mort- .

gage, undoubtedly worked some measure of harm to these plaintiffs, the court has no doubt, but it appears that some of these payments would not fall due until after the interest was in default; likewise it appears that the witness Williams, who testified he was interested in eight lots at $1000 per lot, testified that he didn't anticipate that the requirement would be more than a ten per cent. payment, and that he was interested in shore front lots; and, under the mortgage, it was covenanted that no more than 1000 feet of shore front could be sold without paying the mortgage in full.

It appears that certain lots had been dedicated to the use of the holders of the back lots and certain others were sold, and that those dedicated and those sold covered a total of 1010 feet of shore front. The record does not disclose that these plaintiffs were in a position to make a sale of eight shore front lots, and the burden of showing these things was, as we have stated, on the plaintiffs in this action. We are asked to find as a matter of fact that the course of conduct of this defendant was such as prevented plaintiffs from obtaining the moneys with which to meet his payments, but in view of the uncertainty of this evidence, and, also, in view of the common knowledge that the panic from which this country has been and is suffering has a most material bearing on business of every nature and character, we do not believe that we would be warranted in so finding.

There is further involved in this case the standing of these plaintiffs in a court of equity by reason of the sale of more than 1000 feet of shore front in violation of the provisions in the mortgage in question, which prohibit such sale until the whole of the principal of said mortgage is paid.

It is urged by the plaintiffs that in order to find that more than 1000 feet of shore front have been sold, the shore front lots which were dedicated to the use of the holders of the back lots must be taken into consideration, otherwise the shore frontage sold does not total 1000 feet, and this is true. Plaintiffs further urge that dedicated lots are not lots sold, but with this contention we cannot agree in its entirety. The dedication of these lots to the use of the owners of the back lots was tantamount to a sale of them; if not actually a sale of the fee, it was a sale to the extent that a right of user was given to each purchaser of a back lot, that a valid conveyance of them for any other purpose could not be made, and as a consequence their usefulness and their value to this property as a whole was very materially affected, if not totally destroyed, and, inasmuch as the right of user was attached to the back lots and conveyed by that deed, it was and is in the eyes of the court a sale of these lots.

Unquestionably, the holder of the mortgage could have been compelled to execute a release upon the tender by any owner of a back lot of the sum provided in the mortgage for the release of the property. The power of sale of these lots was entirely in the plaintiffs, and even though it be true that the sale of any shore front in excess of 1000 feet would be voidable, it would not, as plaintiffs urge, be void, although for the land company to make such sale or transfer without first satisfying this mortgage was a violation of their contract. That they did sell more than 1000 feet is shown by the record, and upon being notified by the defendant that they were in default not only by reason of failure to pay interest and taxes but because they had violated the express terms of the mortgage in making a sale of more than 1000 feet of shore front, they attempted to remedy the last default by having a deed executed by the wife and daughter of Herbert T. Jones reconveying to the land company a portion of the shore front. Even though this deed were not voidable on the part of the daughter, which it is from the fact that she is a minor, it would not remedy the breach unless it were consented to by Spinnler; and, consequently,

these plaintiffs are before a court of equity asking relief when they themselves have violated a specific condition in the mortgage which they are asking this court to restrain the holder from foreclosing. He who seeks equity must do equity. These plaintiffs are not here with clean hands, and, consequently, even though they were injured, they are not entitled to relief at the hands of this court.

### Conclusions of law

1. Before one in entitled to an injunction restraining the foreclosing of a mortgage on which the interest is past due, it must clearly appear that the course of action of the mortgagee has been such that it prevented the plaintiffs from obtaining moneys which he would have obtained, but for that course of action, with which to meet his payment.

2. Before it may be held that the course of action of a mortgagee was such that it prevented the mortgagor from obtaining money from the mortgaged premises which would have been sufficient to pay the interest on the mortgage as it became due and the taxes on the premises, it must clearly appear that, but for this course of conduct, purchasers willing to buy and able to buy would have bought a sufficient amount of the land which plaintiffs had the right to sell to provide funds to make such payments.

3. One who has himself violated the specific provisions of a mortgage on which interest has become due and who is in default has no standing in a court of equity to ask equitable relief against foreclosure of such mortgage.

And now, January 28, 1932, the following decree nisi is entered, to wit:

It is ordered, adjudged and decreed that this bill be dismissed at the cost of the plaintiffs, and unless exceptions be taken to this decree nisi within the time provided by the Equity Rules, the prothonotary is directed to enter it as a final decree.